Kurt Opsahl, Esq. (Cal. Bar # 191303) (*pro hac* pending)
Mitchell L. Stoltz, Esq. (DC Bar # 978149) (*pro hac* pending)
Nathan D. Cardozo, Esq. (Cal. Bar # 259097) (*pro hac* pending)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333
Fax: (415) 436-9993
Email: kurt@eff.org

Paul D. Ticen, Esq. (AZ Bar # 024788)
Kelley / Warner, P.L.L.C.
404 S. Mill Ave, Suite C-201
Tempe, Arizona 85281
Tel: 480-331-9397
Fax: 1-866-961-4984
Email: paul@kellywarnerlaw.com

Attorneys for Defendant-Movant JOHN DOE "DIE TROLL DIE"

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PRENDA LAW, INC., | Case No. _____ |
| Plaintiff-Respondent, | |
| v. | **MOTION TO QUASH THE SUBPOENA TO WILD WEST DOMAINS SEEKING IDENTITY INFORMATION** |
| PAUL GODFREAD, ALAN COOPER, and JOHN DOES 1-10 | |
| Defendant-Movant. | [Fed. R. Civ. Pro. 45(c) and L.R. Civ. 7.2] |

Defendant-Movant John Doe, a.k.a. "Die TrollDie" ("DTD"), through undersigned counsel, hereby moves this Court to quash the subpoena issued by Plaintiff-Respondent Prenda Law, Inc. on February 27, 2013 (the "Subpoena"), to non-party WildWest Domains, which resides in this District, initially issued from the Circuit Court of Cook County, Illinois seeking DTD's identity and contact information, issued in support of a civil action filed in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois on February 12, 2013, captioned Prenda Law, Inc. v. Paul Godfread, et al., Case No. 13-L-75, and subsequently removed to the federal District Court of the Southern District of Illinois (Case No. 13-cv-00207) on March 1, 2013 (the "Defamation Suit").  Discussed below, which is attached as Exhibit A to the Request for Leave to File Oversized Memorandum filed herewith, Prenda Law's Subpoena fails to meet the First Amendment requirements demanded of litigants attempting to use the discovery process to obtain identity-related information regarding anonymous online speakers. This Motion, made pursuant to Fed. R. Civ. P. 45(c) and Local R. Civ. P. 7.2, is based on the following Memorandum of Points and Authorities; all accompanying declarations and exhibits; and on such argument as may be received by this Court. DTD respectfully requests that this Court grant his Motion and quash the Subpoena of February 27, 2013, issued by Prenda Law.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY

### A.    Prenda Law

Plaintiff Prenda Law, Inc.'s business is entirely devoted to filing against lawsuits against Doe defendants alleging that they downloaded embarrassing adult films, and using the threat of naming those defendants to leverage cost-of-defense settlements.  It purports to represent clients such as "AF Holdings," an LLC registered in the Federation of St. Kitts and Nevis in the Caribbean. Prenda's business model has been described by a United States District Court as follows:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand;

(4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Does 1-149*, No. 11-cv-2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011) (citation omitted).[1]

Other federal courts have been just as skeptical of Prenda's business model.  As just one example, the United States District Court for the Northern District of Illinois noted that "Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations." *Sunlust Pictures, LLC v. Does 1-75,* No. 12-cv-1546, 2012 WL 3717768, at *5 (N.D. Ill. Aug. 27, 2012) (a Prenda Law case); *see also Hard Drive Prods. v. Does 1-48*, No. 11-9062, 2012 WL 2196038, at *6 (N.D. Ill. June 14, 2012) (same).

**B.    AF Holdings, Alan Cooper's Lawsuit for Identity Theft, and Prenda's Retaliation.**

In connection with many of its lawsuits, Prenda Law has represented—falsely—that Defendant Alan Cooper is an officer and corporate representative of one of its purported clients, AF Holdings. *See, e.g,. AF Holdings v. Does*, C.D. Cal. No. 5:12-cv-6636, Dkt. 1 (Exhibit B)(RJN ¶ 3); *see also* Transcript of March 11 Sanctions Hearing, *Ingenuity 13 v. Does*, C.D. Cal. No. 12-cv-8333, Dkt. No. 93, at 27-32 (Mr. Cooper testifying regarding some of these documents) (RJN ¶ 4). After Mr. Cooper filed suit against Prenda's

---

[1] This case was filed by Brett Gibbs, who was a contract attorney first for the Steele Hansmeier PLLC law firm and then, after the business was sold to Prenda Law, for Prenda Law (working under the direction of John Steele and Paul Hansmeier). March 1, 2013, Declaration of Brett Gibbs, *Ingenuity 13 v. Does*, C.D. Cal. No. 12-cv-8333, Dkt. No. 58 (Request for Judicial Notice, ¶ 1) ("RJN"); April 11, 2013, Declaration of Brett Gibbs, *Sunlust v. Nguyen*, M.D. Fla. No. 8:12-cv-01685, Dkt. 49-1 (RJN ¶ 2). During the pendency of an order to show cause why he should not be sanctioned for his conduct in similar cases, Mr. Gibbs filed a declaration stating that he no longer works for Prenda Law.  March 1 Gibbs Decl. (RJN ¶ 1), at ¶ 5 (describing affiliation with Prenda Law in the past tense).

principals for identity theft,[2] and after Judge Wright of the Central District of California invited Mr. Cooper to testify about what he knew, Prenda attempted to intimidate its detractors into silence by filing this defamation suit against Mr. Cooper, his attorney Paul Godfread, and Does 1-10.  When brought before Judge Wright and given a chance to rebut Mr. Cooper's testimony and other damning evidence of fraud, Prenda's principal Paul Duffy, "of counsel" attorneys Paul Hansmeier and John Steele, and paralegal Angela Van Den Hemel refused, asserting their Fifth Amendment right not to incriminate themselves. Transcript of April 2, 2013 Sanctions Hearing, *Ingenuity 13 v. Does*, C.D. Cal. No. 2:12–CV–8333, Dkt. 103 (RJN ¶ 5).

Prenda's defamation suit is no more than a desperate attempt to punish and intimidate into silence those who have spoken out against it.  The Complaint incorrectly asserts that Defendant Die Troll Die[3] ("DTD") made tortious statements on his[4] blog, none of which are actually actionable, and Prenda immediately attempted to use this ill-conceived lawsuit to require the production of DTD's identity.  This Court should quash the Subpoena so as not to become a handmaiden to what Judge Wright called Prenda's "misconduct which I think brings discredit to the profession."  Transcript of April 2 OSC Hearing (RJN ¶ 5), at 6.

Accordingly, pursuant to Fed. R. Civ. P. 45(c), DTD hereby moves to quash Prenda Law's discovery subpoena which seeks DTD's identity and contact information, issued from the Circuit Court of Cook County, Illinois[5] on February 27, 2013 to Wild West

---

[2] In that case, *Alan Cooper v. John Lawrence Steele, et al.*, No. 27-CV-13-3463, served on February 25, 2013 in the Fourth Judicial District Court, County of Hennepin, Minnesota, Mr. Cooper asserted claims for invasion of privacy and deceptive trade practices, as well as civil conspiracy and alter ego theories.

[3] DTD is the provider of an Internet message board (located at dietrolldie.com) on which pseudonymous online speakers have criticized the practices of Prenda Law and other similar copyright enforcement law firms (known colloquially as "copyright trolls").

[4] For simplicity's sake, Defendant-Movant DTD will be referred to for the remainder of the brief using masculine pronouns.  This is not an admission as to "his" gender.

[5] After a case is removed, "the state courts shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).  All outstanding state court orders in a removed case
*(footnote continued on following page)*

Domains, an Arizona based subsidiary of Go Daddy Operating Company, LLC, and the registrar of the domain on which Die Troll Die's message board is hosted, dietrolldie.com.

### C.      Procedural History

On February 12, 2013, Prenda filed the defamation suit in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, Case No. 13-L-75, against Alan Cooper, Cooper's attorney Paul Godfread, and Does 1-10 ("Defendants").  Prenda alleges that named Defendants and pseudonymous Does criticized Prenda on "Internet communities run and operated by Defendants[,]" including the online message board operated by Doe Defendant DTD at dietrolldie.com. *See* Declaration of Nathan Cardozo, Ex. A (Amended Complaint) ¶ 30.[6]  The domain name dietrolldie.com is registered with Wild West Domains. The Amended Complaint raised eight causes of action, consisting of libel *per se*, false lights, tortious interference with a contract, tortious interference with a business expectancy, and civil conspiracy.  *Id.* at ¶¶ 100-144.

On February 27, 2013, Prenda issued a subpoena to non-party company Wild West Domains from the Circuit Court of Cook County, Illinois[7] seeking DTD's identity and contact information.  Specifically, the subpoena seeks "the name, current (and permanent) addresses, billing addresses, telephone numbers and e-mail addresses associated with the

---

*(footnote continued from preceding page)*
are transformed into federal court orders by operation of law, subject to the limitations of the Federal Rules of Civil Procedure.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70*, 415 U.S. 423, 435-437 (1974).  Accordingly, the Cook County subpoena is now deemed a federal Rule 45 subpoena.  Because Wild West Domains is located in Arizona, a Rule 45 subpoena would have to have been issued here.  Accordingly, this Court is the appropriate court to hear this motion to quash.

[6] Prenda contends that it properly amended the complaint to add a new paragraph listing the Alpha Law Firm LLC as a Plaintiff on February 21, 2013 in an attempt to destroy diversity. Accordingly, this motion references the Amended Complaint. Because none of the alleged statements reference Alpha Law and the subpoena was issued by Prenda Law, this brief will focus on Prenda's claims.  However, the legal analysis below would apply equally to Alpha Law if it actually had stated a claim against DTD.

[7] Cook County is neither the location of the litigation nor the witness, and thus was the wrong court under Illinois law.  735 Ill. Comp. Stat. 5/2-1101.

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

individual who registered dietrolldie.com." Cardozo Decl., Ex. B.  The subpoena demanded production by March 6, 2013.  Plaintiff did not provide notice to DTD of its discovery request, notifying only Defendants Godfread and Cooper.  *Id.*, Ex. H (notice sent to Godfread and Cooper).

On March 1, 2013 the case was removed to the District Court in the Southern District of Illinois, No. 3:13-cv-207 (S.D. Ill.).  On March 12, counsel for DTD informed Mr. Duffy and Prenda that they represent DTD in connection with subpoenas for identity information.  Prenda did not respond.  *Id.*, Ex. C.

On March 22, 2013, Wild West Domains notified DTD of the subpoena, but did not provide him with a copy.  *Id.*, Ex. D.  Later that day, counsel for DTD wrote to Mr. Duffy, seeking a copy of the subpoena.  *Id.*, Ex. E. Prenda responded by claiming there was a typo in DTD's counsel's email, and failed to provide a copy of the subpoena.  *Id.*, Ex. F.  Counsel for DTD reiterated the request in another email.  *Id.*, Ex. G.  To date, Prenda has never provided notice or a copy of the subpoena.  Fortunately, DTD was able to obtain a copy from counsel for Godfread and Cooper.

Because the statements attributed to DTD are not actionable, and because he cannot, pursuant to Section 230 of the federal Communications Decency Act of 1996, 47 U.S.C. § 230, be treated as the "publisher or speaker" of the statements attributed to commenters on the site dietrolldie.com, DTD now files this motion to quash Plaintiff's Subpoena.

## II.     LEGAL STANDARD

Under the Federal Rules, a court may quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv); *see, e.g.*, *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003).  This Court is the appropriate venue for this motion because subpoenas must be challenged before the issuing court, not the court that oversees the underlying litigation.  *See* Fed. R. Civ. P. 45(c)(3)(A); *Orthoflex, Inc. v. Thermotek, Inc.*, No. 12-MC-00013-PHX-JAT, 2012 WL 1038801, at *1 (D. Ariz. Mar. 28, 2012) ("Upon a party's motion to quash a subpoena issued under Rule 45, 'the issuing court, and not the

court where the underlying action is pending, has the authority to consider motions to quash or modify subpoenas.'") (quoting *SEC v. CMKM Diamonds, Inc.*, 656 F.3d 829, 832 (9th Cir. 2011)).  As discussed above, by operation of the removal of the underlying action, this Court is considered to be the issuing court.

## III.   ARGUMENT

### A.    The Right to Engage in Anonymous Speech is Protected By the First Amendment.

Under the broad protections of the First Amendment, speakers have not only a right to publicly express criticism, but also the right to do so anonymously.  Accordingly, the First Amendment requires that those who seek to unmask vocal critics demonstrate a compelling need for such identity-related information before obtaining such discovery.  No such need is implicated in this case.

#### 1.     The Right to Speak Anonymously Is Constitutionally Guaranteed.

The United States Supreme Court has consistently defended the right to anonymous speech, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . .  at the hand of an intolerant society."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *see also*, *e.g.*, *id.* at 342 ("[A]n  author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.");  *Talley v. California*, 362 U.S. 60, 64 (1960) (finding a municipal ordinance requiring identification on hand-bills unconstitutional, noting that "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.").

Anonymity receives the same constitutional protection whether the means of communication is a political leaflet or an Internet message board.  *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet); *see also*, *e.g.*, *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001).  As discussed below, these fundamental rights

protect anonymous speakers from forced identification.

2.     Anonymous Speakers Enjoy a Privilege Under the First Amendment.

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts[8] to pierce anonymity are subject to a qualified privilege.  Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999).  This vigilant review "must be undertaken and analyzed on a case-by-case basis," where the court's "guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue."  *Dendrite Int'l v. Doe No. 3*, 775 A.2d 756, 761 (N.J. Super. Ct. App. Div. 2001).  Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery.  *See, e.g.*, *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 563 (S.D.N.Y. 2004).  In the Internet context, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

While plaintiffs may properly seek information necessary to pursue meritorious litigation, *id.* at 578; *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005), litigants may not use the discovery power to uncover the identities of people who have simply made statements the litigants dislike.  Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to this one have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

This Court has previously applied the test identified by the Delaware Supreme Court in *Doe v. Cahill* to determine a litigant's ability to compel an online service provider to reveal an anonymous party's identity when, as here, the Doe Defendants were engaged in

---

[8] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See*, *e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

purely expressive conduct, *i.e.*, "expressing their views . . . in a forum specifically designed for an exchange of opinions and ideas anonymously."  *See Best W. Int'l, Inc. v. Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695, at *4 (D. Ariz. July 25, 2006) ("Given the significant First Amendment interest at stake, the Court agrees with the Delaware Supreme Court in *Cahill*, and concludes that a summary judgment standard should be satisfied before [a plaintiff] can discover the identities of the John Doe Defendants.").  Under *Cahill*, in order to compel Wild West Domains to reveal Die Troll Die's identity, Prenda must both:

    (1)    undertake reasonable efforts to notify the anonymous defendant of the discovery request and must withhold action to allow the defendant an opportunity to respond; and

    (2)    submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question. . . . [*i.e.*], [Plaintiff] must introduce evidence creating a genuine issue of material fact for all elements of [the] claim within plaintiff's control.

*See Cahill*, 884 A.2d at 461-63.  This Court found that other tests, such as that adopted by the New Jersey Appellate Division in *Dendrite International v. Doe No. 3*, are similar to the summary judgment standard of *Cahill*.  *Best W. Int'l*, 2006 WL 2091695, at *5 (citing *Dendrite*, 775 A.2d at 760).

      As *Cahill* accurately and cogently outlines the important First Amendment interests raised by DTD, and as this Court has already endorsed this approach in the past, the holding and reasoning of *Cahill* should be applied here.

      **B.**    <u>**As Prenda's Subpoena Cannot Survive the Scrutiny Required By the First Amendment, It Must Be Quashed Under Fed. R. Civ. P. 45.**</u>

      Prenda fails both prongs of the *Cahill* First Amendment test that litigants must meet in order to compel the disclosure of the identities of anonymous speakers; consequently, the Subpoena should be quashed.

      1.    <u>Prenda Has Not Made Any Effort to Provide Notice of the Discovery Request to the Doe Defendants.</u>

      First, Prenda has not undertaken reasonable efforts to notify DTD of its discovery request.  In fact, Prenda has not made any attempt at all to notify DTD that he is the subject

of a subpoena, and has failed to respond to requests to provide a copy of the subpoena. Cardozo Decl., ¶¶ 11-17.  As the Delaware Supreme Court noted in *Cahill*:

> [T]o the extent reasonably practicable under the circumstances, the plaintiff must undertake efforts to notify the anonymous poster that he is the subject of a subpoena. . . . [W]hen a case arises in the internet context, the plaintiff must post a message notifying the anonymous defendant of the plaintiff's discovery request on the same message board where the allegedly defamatory statement was originally posted.

*Cahill*, 884 A.2d at 461.  Prenda has not posted such a message on DTD's message board at dietrolldie.com, nor has Prenda undertaken any other effort to provide DTD or any of the other Does with notice.  Indeed, when counsel for DTD directly asked for a copy of the subpoena, Prenda refused to provide one.  Cardozo Decl. ¶¶ 13-16.  Thus, Plaintiff's discovery request fails First Amendment scrutiny under the first prong of the *Cahill* test.

       2.     <u>Prenda Has Not Provided Prima Facie Evidence in Support of the Elements of Its Claims.</u>

Second, and fatal to not only its subpoena but also its Complaint, Prenda cannot introduce evidence creating a genuine issue of material fact for all elements of the claims within plaintiff's control, as required under the First Amendment test discussed above.

Pursuant to the limitations imposed by the First Amendment, only a statement of fact that is provably false can be subject to liability.  A statement is constitutionally protected if it cannot be reasonably interpreted as stating actual facts. *Bryson v. News Am. Publ'ns., Inc.,* 672 N.E.2d 1207, 1220 (Ill. 1996).[9] Opinions are protected speech.  As the Supreme Court explained in *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974):

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

*Id.* at 339-40; *see also Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a

---

[9] Because the original action alleged a violation of Illinois law, Illinois law applies to the determination of whether Prenda filed a valid complaint.

provably false factual connotation will receive full constitutional protection."). Under the

rigorous First Amendment standard, "rhetorical hyperbole," "vigorous epithet[s]," "lusty

and imaginative expression[s] of . . . contempt," and language used "in a loose, figurative

sense" have all been afforded First Amendment protection by the U.S. Supreme Court.  *See,*

*e.g., Greenbelt Coop. Publ'g. Assn. v. Bresler*, 398 U.S. 6, 14 (1970) (finding the use of the

word "blackmail" in a debate to be constitutionally protected); *Old Dominion Branch No.*

*496, Nat'l Assn of Letter Carriers, v. Austin*, 418 U.S. 264, 284, 286 (1974) (use of the

word "traitor" and "scab" to protest anti-union workers held not to be actionable).

     The burden of proving falsity rests on the plaintiff.  *Philadelphia Newspapers, Inc.*

*v. Hepps*, 475 U.S. 767, 776 (1986); *see also Cort v. St. Paul Fire and Marine Ins. Cos.,*

*Inc.*, 311 F.3d 979, 985 (9th Cir. 2002) ("An essential element of defamation is that the

publication in question must contain a false statement of fact.").  Consistent with the

standard for unmasking anonymous speakers, this means that Prenda must provide evidence

within its control to back its claims of falsity.

     The statements must be considered in context, because they may not be regarded as

defamatory if the statements are reasonably capable of an innocent construction.  *Bryson*,

672 N.E.2d at 1215.  In the context of Internet message boards, readers are far less likely to

assume that statements mean actual verifiable facts.  *See, e.g., Global Telemedia Int'l., Inc.*

*v. Doe 1*, 132 F. Supp. 2d 1261, 1270 (C.D. Cal. 2001) ("[W]hile [the online poster's]

sentiments are not positive, the statement contains exaggerated speech and broad

generalities, all indicia of opinion.  Given the tone, a reasonable reader would not think the

poster was stating facts about the company, but rather expressing displeasure with the way

the company is run."); *accord Rocker Mgmt. LLC v. John Does 1 Through 20,* No. 03–MC–

33, 2003 WL 22149380, *3 (N.D. Cal. May 28, 2003) (holding that "vague" and

"hyperbolic" statements posted online were not defamatory); *Underwager v. Channel 9*

*Australia*, 69 F.3d 361, 366-367 (9th Cir. 1995) (comments made in context of heated

debate would be viewed as spirited critique and audience would expect emphatic language

on both sides).

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

Prenda is a public figure. It essentially concedes as much when it asserts it is "one of the largest and most successful copyright infringement firms in the country," Complaint ¶ 5. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983) ("If the purpose of the public figure-private person dichotomy is to protect the privacy of individuals who do not seek publicity or engage in activities that place them in the public eye, there seems no reason to classify a large corporation as a private person.").

Furthermore, Prenda is at least a limited public figure because it has thrust itself into a public controversy. *See Kessler v. Zekman*, 620 N.E.2d 1249, 1254-55 (Ill. App. Ct. 1993). As discussed in the background section above, its litigation methods, employed in hundreds of cases against tens of thousands of defendants, are extremely controversial.[10] As such, Prenda must prove malice. *Republic Tobacco, L.P. v. North Atlantic Trading Co., Inc.*, 254 F. Supp. 2d 985 (N.D. Ill. 2002) ("Substantial truth is an absolute defense to a defamation claim.").

While the burden of proving falsity remains with the plaintiff, truth remains an absolute defense. *New York Times*, 376 U.S. at 271; *Time Inc. v. Hill*, 385 U.S. 374, 382-84 (1967). The test of truth or falsity is substantial truth, where the "gist or sting" of the report is true. *Lotrich v. Life Printing and Publ'g Co.,* 117 Ill. App. 2d 89, 94-96 (1969); *Masson v. New Yorker Magazine*, 501 U.S. 496, 516 (1991) ("[A] statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'") (quoting Robert D. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

---

[10] In addition, Prenda and its attorneys have been the subject of numerous news articles. *See, e.g.*, Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'* Forbes Mag. (Oct. 15, 2012) (Cardozo Decl. Ex. I); Dan Browning, *Federal judge: Copyright troll attorneys hiding something*, Minneapolis Star-Trib. (Mar. 12, 2013) (Cardozo Decl. Ex. J); Timothy Lee, *Man charges porn trolling firm Prenda Law with identity theft*, Ars Technica (Dec. 6, 2012)( Cardozo Decl. Ex. K); Timothy Lee, *Porn copyright troll sues AT&T and Comcast, says they side with pirates*, Ars Technica (Aug. 10, 2012)( Cardozo Decl. Ex. L); Steve Schmadeke, *Chicago lawyer leads fight against porn piracy*, Chi. Trib. (Nov. 15, 2010) (Cardozo Decl. Ex. M).

Prenda complains of dozens of separate statements made by various identified and unidentified defendants.  Amended Complaint ¶¶ 33-99.  With the high standards Prenda must meet in mind, DTD will now explain how each statement that Plaintiff has alleged was actually made by DTD is lawful.

**Paragraph 36:** "Some ships are designed to sink ... others require our assistance."

This is not a statement of a fact, because it contains no actual verifiable facts about Prenda.  A statement is constitutionally protected if it cannot be reasonably interpreted as stating actual facts.  *Bryson*, 672 N.E.2d at 1220.

**Paragraph 37:** "This section [of a Prenda court filing] is truly a masterpiece of equine excrement, which even a failing law school student would think twice before submitting for a grade. Take a read of this section and try not to choke on what Prenda writes."

This is not a statement of a fact, because it contains no verifiable facts.  Whether something is a "masterpiece of equine excrement" cannot be proven one way or the other. *See Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1232 (Ill. App. Ct. 1995) (finding "A con artist! Watch out for the bullshit!" not actionable).

The reference to a failing law school student and that one might "choke" on the argument is colorful hyperbole, not actionable defamation.  *Doherty v. Kahn*, 682 N.E.2d 163, 170-72 (Ill. App. Ct. 1997) (terms like "incompetent," "dishonest," "cannot manage a business" found not to be defamatory); *Newman v. Hansen & Hepel Co.*, No. 01 C 9871, 2002 WL 31455990, *7-8 (N.D. Ill. Nov. 1, 2002); *Sullivan v. Conway*, 959 F. Supp. 877, 880-81 (N.D. Ill. 1997).

Moreover, the Northern District of California looked at the same section of the same court filing (the new paragraphs of a proposed Second Amended Complaint), and found "that the new allegations in the revised proposed SAC are vague and speculative, and do not demonstrate diligence or add any substance to the claims."  Order Denying Motion for Leave to file Second Amended Complaint, *AF Holdings v. Doe*, N.D. Cal. No. 12-cv-02049, Dkt. 45 at 11 (RJN ¶ 6).  The Court goes on to find various parts of this section

"meaningless," "conclusory," "appear[ing] to be based on pure speculation" and "irrelevant."  *Id.*

> **Paragraph 38:** Referring to Prenda Law; Troll Schulz- this isn't easy money and your reputation (if you have one) is going to be associated with a$$hats and criminals."

Calling someone an "a$$hat" is not a statement of a verifiable fact.  The reference to "criminals" is simply hyperbole, expressing DTD's distaste for the business model that a federal judge has called an "extortion scheme."  *Malibu Media, LLC v. John Does 1-10*, No. 2:12–cv–3623–ODW(PJWx), 2012 WL 5382304, *4 (C.D. Cal. June 27, 2012).  Nor is it actionable defamation for DTD to express his opinion that one should think about whether they want to be associated with Prenda.

Indeed, several federal judges have questioned whether one should be associated with Prenda.  After Judge Mary Scriven of the Middle District of Florida dismissed *Sunlust Pictures v. Nguyen*, M.D. Fla. No. 8:12-CV-1685-T-35MAP, for "attempted fraud on the court," she cautioned an attorney that by appearing as local counsel for Prenda, "you're placing your bar number at issue and you're placing your name and your goodwill at issue before a Court" and hoped it proved a lesson against associating "with characters such as the ones that are presented here." Transcript of Hearing, *Sunlust v. Nuygen*, M.D. Fla. 8:12-cv-01685, Dkt. 28 at 22.  The Court also said it would hear a motion for sanctions against Prenda's principal Paul Duffy for his "lack of candor" with the Court.  *Id.*

After Prenda's contract attorney Brett Gibbs testified in the Central District of California about his experience with Prenda Law during a sanctions hearing, Judge Otis Wright asked him "Do you feel like you have been duped by Hansmeier and Steele?", referring to the two attorneys who supervised his work at Prenda. "In a way, yes," Gibbs responded. Transcript of Mar. 11 Sanctions Hearing (RJN ¶ 4), at 97.  At that hearing, Mr. Gibbs also confirmed that Prenda had been using a stamp to send letters over Gibbs's signature – without his authorization.  *Id.* at 90, 111.  At a later hearing, Judge Wright asked several Prenda attorneys, including Mr. Duffy, to respond to evidence of fraud and

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

"such misconduct which I think brings discredit to the profession." Transcript of Apr. 2 Sanctions Hearing (RJN ¶ 5), at 6.  The attorneys, including Mr. Duffy, invoked their Fifth Amendment right against self-incrimination.  *Id.* at 7-9.  To the extent that the quote "criminals" was to be taken as a factual statement, this Court is entitled to infer from Prenda and Mr. Duffy's invocation of the Fifth Amendment that the "gist or sting" of that statement is true. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").

> **Paragraph 39:** Screenshot parodying Simpsons chalkboard scene; Bart Simpson repeatedly writing "I will not file frivolous lawsuits," captioned "Prenda Ethics Training."

As Prenda admits, this is a parody of *The Simpsons*, a satirical cartoon.  In that context, it is not possible to take it as having a literal defamatory meaning.  Moreover, any implication about Prenda's ethics is not a statement of a fact, because it contains no verifiable facts. *Gardner v. Senior Living Sys.*, 731 N.E.2d 350, 355 (Ill. App. Ct. 2000) ("unethical" could not be "reasonably interpreted as stating actual verifiable facts and therefore falls under a constitutionally protected opinion.").

To the extent that this parody could be interpreted as a factual statement, DTD notes that least one federal court has found that Prenda filed frivolous claims. Order to Show Cause re Sanctions, *Ingenuity 13 v. Does, supra*, Dkt. No. 48 (RJN ¶ 7), at 5. ("If a download was not completed, Plaintiff's lawsuit may be deemed frivolous," and later finding there was no evidence of download being completed).

> **Paragraph 42:** "Prenda then doesn't have to prove that the John Doe or Mr. Hatfield infringed. It then becomes Mr. Hatfield's responsibility to do this and seek legal action against John Doe to make him pay his portion of the fine. Pretty slick idea isn't it- In a slimy bottom feeding lawyer way. Note: not all lawyers are like this, but if the shoe fits ..."

This post references Prenda's legal theory that an Internet subscriber is liable under negligence law for the acts of anyone who uses her Internet connection.  Under this theory,

---

14

which has been rejected by several courts,[11] Prenda would establish liability without

proving who in particular infringed.  Describing Prenda's legal theory does not state

verifiable facts; it is an opinion about a theory.  Calling this idea "slick … in a slimy

bottom feeding lawyer way" is nothing more than name-calling.  Name-calling is not

libelous *per se*.  *Delis v. Sepsis*, 292 N.E.2d 138, 142 (1972).

> **Paragraph 43:** "Funny how Prenda will not actually name its investigators and the company they employ. Well I will- Company: 6881 Forensics LLC. Investigator (term very loosely applied): Peter Hansmeier. This is nothing more than a Prenda cover for the Steele/Hansmeier operations that stinks of questionable personnel, untested 'forensic' software, non-certified forensic/Investigative personnel, unethical behavior, and an incestuous relationships of all parties involved."

To raise an issue of material fact with respect to this statement, Prenda must show

that the "gist or sting" of the statement is false, i.e., that it would have a different effect on

the mind of the reader than the truth.  *Masson*, 501 U.S. at 516.

Prenda will be unable to do so.  Paul Hansmeier, an attorney "of counsel" to Prenda

Law and a principal of Prenda's predecessor firm Steele Hansmeier PLLC,[12] has admitted,

under oath, that his brother Peter Hansmeier operated 6881 Forensics LLC and that both

Prenda and Steele Hansmeier use this company.  Hansmeier Deposition (RJN ¶ 8) at 166-

69, 206-08.  Peter Hansmeier, the sole technician for 6681 Forensics, does not have a

technical background or training.  *Id.* at 167, 172-74.  Paul Hansmeier, speaking as a Fed.

R. Civ. P. 30(b)(6) 'person most knowledgeable' witness for Penda client AF Holdings, did

not know the name of the software and was unsure about its origins.  *Id.* at 176-177.  John

---

[11] *Liberty Media Holdings, LLC v. Tabora*, No. 12 Civ. 2234(LAK), 2012 WL 2711381, at *1 (S.D.N.Y. July 9, 2012) ("the negligence claim suffers from at least two problems, each independently fatal to its survival . . ."); *AF Holdings, LLC v. Hatfield*, No. C 12–2049 PJH, 2012 WL 3835102, at *1 (N.D. Cal. Sept. 4, 2012) (dismissing negligence claim based on preemption and lack of legal duty); *AF Holdings, LLC v. Botson*, No. 5:12–CV–02048–EJD, 2012 WL 4747170 (N.D. Cal. Oct. 3, 2012) (dismissing negligence claim based on preemption, lack of duty, and CDA §230 immunity).

[12] Deposition Transcript of Paul Hansmeier, *Ingenuity 13 v. Doe*, Dkt. No. 71 (RJN ¶ 8), at 92 (referencing the "sale of Steele Hansmeier . . . to Prenda Law.").

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

Steele and Paul Hansmeier are now "senior lawyers" with Prenda, and Prenda's contract attorneys report to them.  March 1 Gibbs Decl (RJN ¶ 1), at ¶ 5; April 11 Gibbs Decl. (RJN ¶ 2), at ¶ 3-4.  The CEO of Prenda Law's purported clients, AF Holdings LLC, Livewire LLC and Ingenuity 13 LLC, is Mark Lutz, who was formerly a paralegal of Steele Hansmeier.  Hansmeier Depo. (RJN ¶ 8), at 130-32.  In a January 2012 letter to the Florida State Bar in response to a bar complaint against him, Mr. Steele's attorney wrote that "Mr. Steele is actually a client of Prenda. Steele maintains an ownership interest in several of Prenda's larger clients."  Motion for Sanctions, Exhibit K, *AF Holdings v. Patel*, No. 2:12-cv-00262, Dkt. 16-11 (RJN ¶ 9) at 8.

While much of these facts are evidenced by a deposition on February 19, 2013, truth "discovered during the course of litigation is as effective a defense as truth known at the time of the publication." *Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *8 (N.D. Ill. Sept. 11, 2002).  Moreover, DTD's low opinion of this operation is not defamatory because it does not state verifiable facts.  *Gardner*, 731 N.E.2d at 255 (characterizing someone as "unethical" is not a verifiable fact).

**Paragraph 44:** "Just more FUD from the great minds at Prenda. Keep it up boys, just more evidence to support the abuse of process and harassment claims."

In context,[13] the statement is preceded by a discussion of a Doe who received a phone call from Prenda.  The post states: "The case this Doe is under was initially filed in July 2011, and was voluntarily dismissed in 2012. So it looks like Prenda is going after Does when there is no active case against them."  Prenda does not dispute the truth of this statement, nor the transcript of the phone call published, but rather DTD's opinion that the call was "FUD" ("fear, uncertainty, and doubt"). This is not a verifiable fact.

DTD's opinion that the phone call could provide evidence for an abuse of process claim is not actionable.  Because abuse of process is not a crime, the statement cannot be

---

[13] The context of this statement is available at http://dietrolldie.com/2012/06/16/prenda-robo-calls-stupidity-gone-automatic/comment-page-1/.

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

libel per se, and therefore is not actionable because Prenda did not allege that this statement caused it damage.  General allegations about damage to reputation and business are not enough.  *Bruck v. Cincotta*, 371 N.E.2d 874, 879 (Ill. Ct. App. 1977).  Prenda must show which statements caused what damage and how such damage was caused.  *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1199-1200, 1206 (ND Ill. 1984).  Prenda fails to make that showing.

Second, it is not libelous because it is simply expresses the opinion, albeit hyperbolically, that phone calls seeking payment for a closed case, on pain of Prenda Law filing a "lawsuit with your name in it" involving an adult film, and posting that suit online, is abusive.  As Judge Wright explained, "Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court—not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos." Order To Show Cause Re Sanctions, *Ingenuity 13 v. Does*, *supra*, Dkt. No. 48 (RJN ¶ 7), at 7.

Finally, DTD notes that Prenda has indeed been found to have abused the subpoena process by a federal court.  In *Ingenuity 13 v. Does*, the Court determined that Prenda had processed subpoenas after the Court ordered it not to.  *Id*. at 8.  Moreover, people *have* filed abuse of process claims arising from Prenda's lawsuits. *See, e.g.*, Answer and Counterclaim, *AF Holdings v. Olivas*, D. Conn. No. 3:12-cv-01401-JBA, Dkt. 10 (RJN ¶ 10).

> **Paragraph 46:** "Not that Prenda really cares about possible defendant guilt or innocence. They only want to generate settlements and the possibility of innocent parties only messes up their business model. In their eyes, all the defendants are guilty."

In the context of this post,[14] DTD is referencing Prenda's 'copyright negligence' legal theory, which was included in the case discussed in the post. Pursuant to this theory

---

[14] The context of this statement is available at http://dietrolldie.com/2012/05/16/prenda-sloppy-seconds-the-phantom-doe-part-2-case-312-cv-02049-af-holdings-llc-v-john-doe-and-josh-hatfield/comment-page-1.

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

(which has been rejected by at least five courts and has never survived a contested motion), the subscriber at a particular IP address is liable for any infringement that occurs on her network, regardless of whether or not the subscriber herself actually infringed. Thus the post's reference to 'not caring about guilt or innocence' is, in context, about this incorrect legal theory by which liability is established regardless of whether the defendant is guilty or innocent of *infringement*.  DTD's analysis of this legal theory does not state a factual matter, and is not actionable.

> **Paragraph 47:** Prenda's "repulsive business model started the same way in the Federal system and now because of our actions, is moving on to new uncharted ground. I'm sure some of our friendly lawyers will enlighten us on the veiled '30 day' reference. That or the affected Does will find us via Google and the fun begins. You claims of great success in the courts is the usual Troll bravado. Yawn .... We understand we will not be successful all the time, but we are one hell of a thorn in your side. The thorn will fester and your operations will suffer for it."

Calling Prenda's business model, which Judge Wright has described as a "legal shakedown" and an "extortion scheme,"[15] "repulsive" is protected opinion speech.  While it may be a verifiable fact whether or not Prenda's litigation program started in the federal system, this is not defamatory whether true or not.  The remaining aspects of this paragraph are not statements of fact.

> **Paragraph 54:** "Media Copyright Group, 6881 Forensics, etc.; this is the basis for what gets Prenda and the other Trolls their subpoenas granted. Destroy this and their operation takes a dive. Don't lose faith and keep telling the Trolls to bring it on. They don't want a full-out trial, only your money."

---

[15] Order Vacating Prior Early Discovery and to Show Cause, *Ingenuity 13 v. Does*, *supra*, Dkt. No. 28 (RJN ¶); *Malibu Media*,2012 WL 5382304, *4.

As an initial matter, this was published Jan. 14, 2012.[16]  The statute of limitations for defamation in Illinois is one year. *See* 735 Ill. Comp. Stat. 5/13-201. Since this case was filed February 11, 2013, a defamation claim based on this statement is time-barred.

Furthermore, the notion that Prenda does not want a trial has been established in a Federal Court: "The federal courts are not cogs in plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial."  *Malibu Media*, 2012 WL 5382304, at *4.

Moreover, Prenda has admitted that, out of its first 200 or so lawsuits, against approximately 15,000 John Does, not a single defendant was served.  *AF Holdings v. Does 1-135*, N.D. Cal. No. 5:11-cv-3336, Dkt. No. 43-1 (RJN ¶ 12), at 4 (admitting "our records indicate that no defendants have been served in the below-listed cases").

**Paragraph 49:** "Well I got to give it to the sneaky minds at Prenda Law."

This is not a statement of a fact, because it contains no verifiable facts.  *Quinn*, 658 N.E.2d at 1232 ("A con artist! Watch out for the bullshit!" is not actionable).

**Count I:** Libel Per Se – Criminal Offense

None of the statements quoted in Paragraph 102 were stated by DTD.  We note that these are generally quotes of hyperbole – for example, comparing Prenda to serial killers Dahmer and Bundy cannot reasonably be thought of as a factual assertion, and the description "extortion scheme" is a quote from a federal court order.  Furthermore, the unattributed quotes like "criminal acts" and "crooks" are not libel per se.  "In order for words charging the commission of a crime to be libelous per se, the offense must be indictable, involve moral turpitude and be punishable by death or imprisonment rather than by a fine."  *Bruck*, 371 N.E.2d at 878 (citing *Mitchell v. Peoria Journal-Star, Inc.* 221

---

[16] The context of this statement, with date stamp, is available at http://dietrolldie.com/2012/01/14/dtd-torpedo-hits-prenda-case-111-cv-09064-pacific-century-international-ltd-v-does-1-31-troll-paul-duffy/.

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

N.E.2d 516 (Ill. Ct. App. 1966)).  Without specifying the particular crime, these quotes are not sufficient.

**Count II**: Libel Per Se – Want of integrity

None of the words quoted in paragraph 108 was stated by DTD.  DTD notes, as discussed above, that federal courts have found Prenda has attempted a fraud upon the court.  Transcript of Hearing, *Sunlust v. Nguyen*, Dkt. 28 (RJN ¶ 13).  It has acted in "bad faith."  *Hatfield*, 2013 WL 97755, at *7 (AF Holdings' "conduct is at least suggestive of bad faith."); *Botson*, 2012 WL 5426091, at *2 ("the court is concerned that the proposed amendments are sought in bad faith … simply to keep the only identified defendant 'on the hook'"). It has violated Rule 11. *Ingenuity 13 v. Does*, Dkt. 48 (RJN ¶, 7) at 5.  Most importantly, as noted above, this Court is entitled to take an adverse inference from the fact that, when faced with evidence of its fraud, Prenda invoked the Fifth Amendment right against self-incrimination.  *Id.*, Dkt. 103 (RJN ¶5), at 7-9.  With this in mind, Prenda cannot meet its burden of showing that the "gist or sting" of any statement construed to be a factual assertion of a lack of integrity is false.

**Count III:** Libel Per Se – Lack of Ability

The only DTD statement quoted here, referencing "criminals," is addressed above in the discussion of Paragraph 38.  The quoted statements are all opinion or hyperbole, not actionable defamation.  *See Gerrard v. Garda*, No. 08-cv-1146, 2009 WL 269028 at *3 (C.D. Ill. Jan. 30, 2009) ("incompetence," "business ineptitude," and "lack of business expertise" are vague and conclusory; not reasonably capable of being objectively verified).

**Count IV:** Libel Per Se - Fornication and adultery

Defamation by assertions of fornication and adultery are not applicable to a corporation.  *Chicago Conservation Ctr. v. Frey*, 40 Fed. Appx. 251, 255 (7th Cir. July 2, 2002) (unpublished).  In any event, referring to "incestuous relationships of all parties involved" and calling Plaintiff's attorneys "cornholers" is mere name-calling, and not libelous per se.  *Delis v. Sepsis*, 292 N.E.2d 138, 142 (1972).

**Count V:** False Lights

First, Plaintiff has not alleged that any of the statements quoted in Paragraph 125 were made by DTD, nor in fact were they.  Second, as a corporation, Prenda is not entitled to assert false light claims under Illinois law.  *See Oberweis Dairy, Inc. v. Democratic Cong. Campaign Comm., Inc.*, No. 08 C 4345, 2009 WL 635457, at *1 (N.D. Ill. March 11, 2009).

**Count VI and VII:** Tortious Interference

The Illinois Supreme Court has described defamation and tortious interference claims as "analytically intertwined."  *Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989). For this reason, courts have applied constitutional considerations to tortious interference claims:

> Any libel of a corporation can be made to resemble in a general way this archetypal wrongful-interference case, for the libel will probably cause some of the corporation's customers to cease doing business with it. . . . But this approach would make every case of defamation of a corporation actionable as wrongful interference, thereby enabling the plaintiff to avoid the specific limitations [of the law of defamation]

*Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273-74 (7th Cir. 1983).

Accordingly, Prenda may not maintain a tortious interference claim based upon protected speech.[17]

Likewise, courts do not permit tortious interference claims based on truthful speech. *Delloma v. Consolidation Coal Co*., 996 F.2d 168 (7th Cir. 1993). A "statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 516.  Given that Prenda has been found to violated discovery orders and Rule 11, had a case dismissed for "attempted fraud on the courts," had its practices called by courts a "legal shakedown" and

---

[17] Courts around the country agree.  *See Med. Lab. Mgmt. Consultants. v. Am. Broad. Cos.*, 306 F.3d 806, 821-22 (9th Cir. 2002); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir.1990); *Redco Corp. v. CBS, Inc*., 758 F.2d 970, 973 (3d Cir.1985); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994).

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

an "extortion scheme," and been forced to take the Fifth in the face of unrebutted evidence of fraud, Prenda cannot show that the statements in its complaint would have a different effect on the mind of the reader than the truth.

**Count VIII:** Civil Conspiracy

Under Illinois law, the elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Adcock v. Brakegate, Ltd*., 645 N.E.2d 888, 894 (Ill. 1994).

"Plaintiff's statement that they conspired is insufficient—the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Here Prenda fails to allege any specific facts to show that a conspiracy existed, or that there was any concerted action.[18]  Moreover, as discussed above, the alleged posts were not tortious, and thus are not an unlawful purpose or means.

> 3.   Defendants' First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Their Identities.

Pursuant to *Dendrite*, 775 A.2d at 760-61, the Court should "balance the defendant's First Amendment right of anonymous free speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous defendant's identity to

---

[18] In addition, Prenda has admitted that it does not have sufficient information to allege specific facts: "Plaintiff has no way of knowing if multiple individuals use the pseudonym to make comments, of [sic] if one writer uses multiple pseudonyms to libel Plaintiff." Amended Complaint (Cardozo Decl. Ex. A), at ¶ 31.  Without more than one individual, there can be no conspiracy.

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

allow the plaintiff to properly proceed."

As noted above, the *prima facie* case is weak. Balanced against that is the severe First Amendment harm if Prenda is allow to unmask its critics.

**C.** **Die Troll Die Is Not Liable for Statements of Third Party Commentators Under Section 230 of the Communications Decency Act, and so Those Statements Provide No *Prima Facie* Evidence in Support of Plaintiff's Claims.**

DTD cannot be held liable for the allegedly defamatory statements posted on his online message board, and thus those statements provide no *prima facie* evidence in support of Plaintiff's claims against him, as required under the First Amendment test discussed above. Pursuant to subsection (c) of Section 230 of the federal Communications Decency Act ("Section 230"), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service[,]" including, for example, the third party commentators on Die Troll Die's message board. *See id.* § 230(f)(3); *see also Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (holding that "message board postings do not cease to be 'information provided by another information content provider' merely because the 'construct and operation' of the web site might have some influence on the content of the postings").

The practical effect of the statute is that it immunizes online service providers – providers of "interactive computer services" – from attempts to hold them liable for the behavior of and materials provided by third parties; i.e., other "information content providers." *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1179 (9th Cir. 2008) (en banc) ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.") (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Furthermore, under Section 230, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial

23

functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred." *Zeran*, 129 F.3d at 330.  The *Zeran* court observed that in enacting Section 230, Congress chose not to "deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Id.* at 330-31.

DTD's message board website at dietrolldie.com is an "interactive computer service" within the meaning of Section 230, and so he is immune from suit for causes of action arising from comments posted by third party users.  *See* 47 U.S.C. § 230(f)(2) ("The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ."); *see also Fair Hous. Council*, 521 F.3d at 1162 n.6 ("Today, the most common interactive computer services are websites."); *Id.* at 1163 (noting that Congress passed Section 230 in order to prevent an Internet service provider from being held liable for a "libelous message posted on one of its . . . message boards"); *Universal Commc'n Sys., Inc.*, 478 F.3d at 418 (In enacting Section 230, "Congress intended that, within broad limits, message board operators would not be held responsible for the postings made by others on that board.").

Moreover, courts have recognized that the causes of action Plaintiff asserts against DTD are among those that fall within the immunity provided by Section 230.[19]  Because Plaintiff's causes of action for defamation, false light, tortious interference, and civil conspiracy do not fall among these exceptions, DTD is immune to any liability that third-party users may face under these causes of action for statements those third-party users posted on dietrolldie.com.  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (holding provider of online matchmaking service immune from defamation

_____

[19] Some limited exceptions to Section 230's protections are written into the statute: carve-outs for intellectual property claims, § 230(e)(2); for enforcement of the federal Electronic Communications Privacy Act, § 230(e)(4); and for federal criminal law, § 230(e)(1).  None of these carve outs apply here.

suit under Section 230); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) ("The cause of action most frequently associated with the cases on section 230 is defamation. . . . [But] a provider of information services might get sued for . . . false light . . . . [W]hat matters is not the name of the cause of action[,] [but whether it] requires the court to treat the defendant as the 'publisher or speaker' of content provided by another. . . . If it does, section 230(c)(1) precludes liability."); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1178 (9th Cir. 2009) (holding distributor of Internet security software entitled to Section 230 immunity from claim of tortious interference with contractual rights); *Shrader v. Beann*, No. 12-1109, 2012 WL 5951617, at *3 (10th Cir. Nov. 29, 2012) (holding owner of an Internet trade website entitled to Section 230 immunity from civil conspiracy claim); *accord Cornelius v. Deluca*, No. 1:09CV72 SNLJ, 2009 WL 2568044, at *2 (E.D. Mo. Aug. 18, 2009) (Section 230 barred the plaintiffs' civil conspiracy claim.).

Thus, although Plaintiff attempts to conflate the statements made by third party users of dietrolldie.com with statements made by DTD and the other Defendants, DTD cannot be held liable for any cause of action arising out of statements made by third-party commenters on his site.  As such, these statements by third parties provide no evidence to support Plaintiff's claims, and so should not factor into the First Amendment analysis under *Cahill*, as discussed above.

**IV.    CONCLUSION**

For the reasons stated above, Defendant respectfully requests that this Court quash Plaintiff's subpoena to Wild West Domains.

RESPECTFULLY submitted this 17th day of April, 2013.

By:   __/s/ Paul D. Ticen____
Paul D. Ticen, Esq.
Kelley / Warner, P.L.L.C.
404 S. Mill Ave, Suite C-201
Tempe, Arizona 85281

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kurt Opsahl, Esq.
Mitchell L. Stoltz, Esq.
Nathan D. Cardozo, Esq.
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109

Attorneys for Defendant-Movant
JOHN DOE "DIE TROLL DIE"

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF FILING AND SERVICE</u>

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on April 17, 2013, I electronically filed:

### MOTION TO QUASH

with the U.S. District Court clerk's office using the ECF system.  Through electronic mail and first class U.S. Mail (on April 18, 2013), I will send notification to the following counsel of record:

Paul A. Duffy
Prenda Law, Inc.
161 North Clark Street, Suite 3200
Chicago, IL 60601
E-Mail: paduffy@wefightpiracy.com
Attorney for Plaintiff

### KELLY / WARNER, PLLC

By      /s/ Paul D. Ticen
        Paul D. Ticen
        404 S. Mill Ave, Suite C-201
        Tempe, Arizona 85281
        Attorney for Defendant

DEFENDANT-MOVANT DTD'S
MOTION TO QUASH